In the United States District Court
for the District of Columbia

| | | |
|---|---|---|
| United States of America, | ) | Case No. 1:21-cr-00660-RBW |
| | ) | |
| Plaintiff, | ) | Defendant Daniel Michael Morrissey's |
| v. | ) | Sentencing Memorandum |
| | ) | |
| Daniel Michael Morrissey, | ) | |
| | ) | Date: August 16, 2022 |
| Defendant | ) | Time: 3:30 p.m. |
| | ) | Hon. Reggie B. Walton |

Comes now the defendant Daniel Michael Morrissey and provides the Court with

his memorandum regarding sentencing.

Dated: July 26, 2022                    Respectfully submitted,

                                        Anthony M. Solis,
                                        A Professional Law Corporation

                                        _Anthony M. Solis /s/_____
                                        By: Anthony M. Solis
                                        DC Bar No. 466104
                                        23679 Calabasas Road, Suite 412
                                        Calabasas, CA 91302
                                        anthonysolislaw@gmail.com
                                        213-489-5880

1

**Memorandum of Points and Authorities**

Daniel Morrissey comes before the Court for sentencing having pled guilty to a violation of 40 U.S.C. § 5104(e)(2)(G) - parading, demonstrating, or picketing in a Capitol Building. Based upon the following, the defendant respectfully requests the Court impose a sentence of 12 months of probation and restitution in the amount of $500.00.

**I. Introduction**

The Court is well aware of the general course of events on January 6, 2021 at the U.S. Capitol. The conduct of those that entered the Capitol building ranged widely–from assaults on Capitol Police, to invading the offices of Members of Congress to vandalism, to wandering the halls of the Capitol Building. Mr. Morrissey's conduct is clearly among the lowest order of these offenders.

Mr. Morrissey entered the Capitol from the East side, lingered for approximately 25 minutes and left. What is remarkable about Mr. Morrissey's offense is what he did **not** do: (1) He did not breach the building–he entered through an open door; (2) he did not engage in any acts of destruction or vandalism; (3) he did not arrive at the Capitol with any organized group; (4) he did not broadcast his entrance to the Capitol on social media or other outlets. Instead, he informed a friend that he had been there by sending him a picture of himself in the building. That friend later identified Morrissey to the FBI, which contacted him in February of 2021. Thereafter, Mr. Morrissey, who was in the process of moving, retained counsel and ensured that the FBI could reach him at anytime. When the

2

FBI finally sought his arrest on the Complaint in this matter, Mr. Morrissey promptly arranged for his surrender on the warrant (in Colorado) and his initial appearance in this district. After making his initial appearance, he promptly accepted responsibility and entered a plea.

## II. The Factors Under 18 U.S.C § 3553(a)

The U.S. Sentencing Guidelines do not apply in this case. PSR. ¶ 105. The maximum term is 6 months in custody with a maximum fine of $5,000. Were a probationary sentence selected the maximum term of probation is 5 years. *See* PSR §§ 89-95, 100. The factors under 18 U.S.C. § 3553(a), of course, bear evaluation.

### A. Nature and Circumstances of the Offense.

### 1. Initial Offense Conduct.

The circumstances of Mr. Morrissey's particular offense are limited and discrete. They are summed up in a single paragraph in the Statement of Offense agreed to by the government:

> Morrissey entered the Capitol building through the Rotunda
> door at 2:27 p.m. Morrissey proceeded into Statuary Hall, then
> entered the Will Rogers Hallway before protesting at the House
> Main Door. He exited the Upper House Doors at 2:55 p.m. for
> a total of approximately 28 minutes inside the Capitol.

Statement of Offense ¶ 10. *See also* PSR ¶ 23.

3

There is no allegation that Mr. Morrissey personally damaged any property, harmed or assaulted anyone, or engaged in other conduct not described in his Statement of Offense.

### 2.   Post-Offense Conduct

After Mr. Morrissey exited the building, Mr. Morrissey showed a single person–a former co-worker– a photo and video of himself inside the Capitol, along with other photos of himself in Washington, D.C.  PSR ¶ 20, 21. That person then called the FBI tip line and reported the contact. Mr. Morrissey did not engage in any other conduct. He did not blast out his photo or video on any social media or broadcast his involvement in any other way.[1] He has given no interviews or made post-offense statements boasting about his participation.[2]

In or about February 2021, Mr. Morrissey was contacted by law enforcment (FBI) regarding his presence in the Capitol. At that time, no charges had been filed. Mr. Morrissey promptly contacted undersigned counsel who reached out to the FBI and confirmed the representation and verified that Mr. Morrissey would present himself at

---

[1]The Plea Agreement obligates Mr. Morrissey to permit law enforcement to review any social media accounts for statements and postings in and around January 6, 2021 and to conduct an interview regarding the event. To date, however, the government has not requested such a review or interview, likely owing to the fact that Mr. Morrissey is not an active social media user. See Plea Letter ¶ 3, PSR, ¶ 7.

[2]He was invited to participate in a documentary about the January 6 event, and promptly declined.

any time charges were filed or his presence was required. In October, 2021, undersigned counsel was informed by the government that charges were filed and an initial appearance was required. At the time, Mr. Morrissey was living in Colorado so an initial appearance was scheduled in that district. Thereafter, Mr. Morrissey made his initial appearance in this district, on November 9, 2021. A plea agreement was reached and entered on the docket on February 23, 2022. Dkt. ##16-17.

There really is no further conduct about Mr. Morrissey's participation worthy of mention. As indicated, his participation, both before, during and after January 6, 2021 was limited and discrete.

The government, for its part, has identified a list of factors to consider when evaluating a defendant's individual conduct in the Capitol Building prosecution. Each will be discussed *seriatim*:[3]

**(A) Whether, when and how the defendant entered the Capitol building.**

As noted above, Mr. Morrissey entered peacefully through an open door. There is no allegation of violence, or breaking any windows or doors or similar conduct;

**(B) Whether the defendant engaged in any violence or incited violence.**

There is no allegation whatsoever that Mr. Morrissey engaged, incited or promoted any violence.

_____

[3]These factors were identified in the government's sentencing memorandum in *United States v. Lori Vinson*, 21-cr-00355-RBW, p. 15.

5

**(C) Whether the defendant engaged in any acts of destruction**.

There is no allegation whatsoever that Mr. Morrissey engaged in any acts of destruction, defacement, vandalism or the like.

**(D)    The defendant's reaction to acts of violence or acts of violence or destruction.**

Mr. Morrissey made no pronouncements before, during or after the January 6 event that lauded or celebrated the violence that occurred on that day. He made no social media posts or other media interviews or pronouncements. The video evidence obtained by the government has no indication that Mr. Morrissey approved of or promoted violence. When interviewed by Probation for the PSR, Mr. Morrissey confirmed that he had "no seditious sentiments" and "no intent of malice" on January 6. PSR ¶ 26. He mentioned that he had "no idea that people would cause vandalism." PSR ¶ 27. At no time did Mr. Morrissey ever express any approval for violence or destruction of property.

**(E) Whether during or after the riot, the defendant destroyed evidence.**

Mr. Morrissey is not alleged to have done any such thing.

**(F) The length of the time inside the building and where the he traveled.**

As noted by the PSR, the defendant spent approximately 28 minutes in the Capitol, entering through the Rotunda Door, proceeding to Statuary Hall and entering the Will Rogers Hallway before protesting at the House Main Door. PSR ¶ 23.

6

**(G) The defendant's statements on social media.**

There were none.

**(H) Whether the defendant cooperated with law enforcement.**

Mr. Morrissey cooperated fully with law enforcement, first in ensuring they could locate him when/if charged with a crime and later, his plea agreement contains a cooperation provision, to which he willingly agreed.[4]

**(I) Whether the defendant otherwise exhibited remorse or contrition**.

Mr. Morrissey promptly resolved his case, pledged cooperation with the government investigation and expressed contrition, first though his guilty plea and later through his interview with Probation and his letter to the Court.

Were the Court to evaluate the defendant's conduct even in light of the government-suggested analysis, Mr. Morrissey is at the lowest end of the spectrum of individual defendants in this larger case.

### III. Personal History and Characteristics.

Daniel Morrissey is 40 years old and recently re-located to the Austin, Texas area to care for his elderly parents. Unfortunately, as the Court learned at the status

---

[4]While Mr. Morrissey pledged his full cooperation, the government understands that, because Mr. Morrissey traveled alone, unaffiliated and wasn't on social media, his cooperation–mainly in identifying others who participated–has little to no value. To date, the government has not requested Mr. Morrissey's cooperation or to inspect his social media accounts as required by the plea agreement.

conference on July 14, 2022, Mr. Morrissey recently lost his father and now remains with his mother to assist in her care. As the PSR confirms, Mr. Morrissey is gainfully employed and continues to write and create from his home office. This arrangement permits him to pursue his chosen career while still being with his mother to manage her care.

Mr. Morrissey has a scant criminal history, having pled guilty to a DWI when he was 21 years old (PSR ¶ 33).[5] He has no other criminal history.

According to the PSR, Mr. Morrissey has struggled with mental health issues in the past, mainly depression. However, Mr. Morrissey confirms that he is not currently involved in mental health treatment and remains healthy. PSR ¶ 58-63. Mr. Morrissey is also confident that his mental health history played no part in the offense conduct. He fully embraces his acceptance of responsibility and deems his prior mental health history "unrelated" to the offense. PSR ¶ 64.

### IV. The Need for The Sentence to Reflect the Seriousness of the Offense, Etc.

#### A. The Need for the Sentence to Reflect the Seriousness of the Offense.

Mr. Morrissey concedes the offense conduct was serious. The PSR confirms that Mr. Morrissey regrets his conduct, noting that "hindsight is 20/20. I never should have walked through those doors. I had no idea people would cause vandalism" PSR ¶ 27.

---

[5]The PSR also refers to a "conviction" in 2017, however, the case was clearly "dismissed in the interests of justice" per California Penal Code § 1385, which means that it is not a conviction.

8

When contacted by the FBI, he "immediately responded" and did not attempt to evade detection or apprehension. *Id.* Instead, he kept in touch with the FBI, through counsel, and when charged, he immediately made arrangements for his surrender.

It is noteworthy that, unlike many involved in this investigation, after the events of January 6, 2021, Mr. Morrissey never made impertinent comments about his participation, never boasted on social media about his presence in the Capitol and has never made post-plea statements which called into question his acceptance of responsibility.[6] In reality, Mr. Morrissey has always understood that his conduct was serious and has never sought to minimize or belittle the seriousness of the offense. In light of the limited nature of Mr. Morrissey's conduct, a sentence of 12 months of probation and restitution in the agreed-upon amount of $500 reflects the serious nature of the offense.

**B.     The Need for the Sentence to Promote Respect for the Law.**

The sentence meted out by the Court also needs to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A). Because Mr. Morrissey's conduct consisted of walking into the Capitol, chanting, and later walking out, a probationary sentence that recognizes Mr. Morrissey broke the law and later accepted responsibility by pleading guilty promotes respect for the law.

---

[6]The Court will recall that at the July 14, 2022 status conference, Mr. Morrissey expressed some concerns about legal issues, but never (a) repudiated his plea agreement; (b) retracted his acceptance of responsibility; or (c) expressed any desire to withdraw his offered plea.

Upon information and belief, the government has charged, or sought to charge, every individual who entered the Capitol Building on January 6 whom it could identify.[7] The fact that every individual who entered the Capitol was charged itself promotes respect for the law, but a sentence that promotes respect for the law is one that recognizes or reflects that there were different levels of offenders within the same event. Among those defendants Mr. Morrissey is among the lightest offenders–which is not to minimize his conduct, but to put it proper context.

C.   **To Afford Adequate Deterrence to Criminal Conduct/Protect the Public from Future Crimes of the Defendant.**

With regard to general deterrence, any sentence the Court metes out will likely deter future criminal conduct merely because all participants who entered the Capitol that the government could identify got charged. That has a generally deterrent effect that no participant can escape prosecution if they could be properly identified.

With regard to specific deterrence–deterring Mr. Morrissey from future criminal conduct–the defense-suggested sentence is sufficient to achieve this goal of sentencing. As the PSR reveals, Mr. Morrissey traveled to the Capitol on January 6 by himself. He

---

[7] *See,* comments of US Attorney General Merrick Garland, NBC News 7-26-2022, "We intend to hold everyone, anyone who was criminally responsible for the events surrounding Jan. 6, . . .accountable."

was not part of any group advocating a particular cause or election outcome.[8] He has no contacts with groups or causes that might lure him into future, similar conduct. Morrissey has a healthy respect for the law and he requires no particularly punitive sentence to deter him from similar future conduct. His strict compliance with the Court's conditions of release offer some indication that Mr. Morrissey respects the Court and its orders and a 12-month period of supervision would be no different.

**D. To Avoid Unwarranted Sentencing Disparity.**

In a prosecution such as the present case, a rare opportunity is provided to evaluate cases for similar conduct because all the cases or conduct, essentially occurred at the same time. It is not terribly productive to compare Mr. Morrissey with others who engaged in much more egregious conduct such as acts of violence or destruction of property, however, many of the related defendants are similarly situated to Mr. Morrissey–those that entered the Capitol, protested or shouted and then left. Even within the analysis of those charged with the same statute, 40 U.S.C. § 5104(e)(2)(G), there is a spectrum of conduct.

Among the defendants charged under the same statute with similar conduct before this Court are as follows:

1. **Lori Vinson**, 21-cr-00355-RBW. The defendant received 5 years

---

[8]Other defendants in the January 6 prosecution have been part of interest or advocacy groups or participated in other, similar protest events.

11

probation, $5,000 fine, 120 hours of community service and $500 restitution. While

Vinson ultimately accepted responsibility, she also made recorded statements to news

outlets that she felt she did nothing wrong and "wouldn't change it." She described her

conduct as "justified." *See* Govt sentencing memo Dkt. #43. She also boasted about her

participation in the breach of the Capitol to media outlets.

      2. **Thomas Vinson**. 21-cr-00355-RBW. Mr. Vinson received the same

sentence. While Mr. Vinson did not espouse the same pride in participation, he did

participate in a call with his wife and the FBI while his wife misled the FBI, though later

they both apparently truthfully cooperated. Mr. Vinson apparently recorded violent

attacks on law enforcement which was another aggravating factor. *See* Govt Memo Dkt.

44, p. 16.

      3. **Anthony Mariotto.**  21-cr-00094-RBW. Mr. Marriotto received 36

months probation, a $5,000 fine, 250 hours of community service and $500 restitution.

Mr. Marrioto entered the Senate gallery and took selfies which were later posted on

Facebook with the caption "this is our house." *See* Govt Memo Dkt. 35, p. 2. He also

marched through the halls chanting "where are the traitors." *id.* Finally, this defendant

gave a post-arrest interview to a local news station minimizing his conduct. *Id.*

      4. **Joseph Zlab**. 21-cr-00389-RBW. Mr. Zlab was sentenced to 36 months

probation, a $500 fine, $500 restitution and 200 hours of community service. The

government memorandum reveals that Mr. Zlab paraded around the Capitol with a

"Don't Tread on Me" flag and entered numerous rooms and offices within the Capitol. He remained in the building for approximately 13 minutes.

5. **Andrew Hatley**. 21-cr-00098-TJH. Hatley was sentenced to 36 months of probation and $500 in restitution. Hatley entered the Capitol through a window that had been smashed. He took pictures and remained in the Capitol for about 15 minutes. He later turned himself in and expressed remorse.

6. **William Blauser.** 21-cr-00386-TNM. Blauser was sentenced to only a $500 fine and $500 in restitution. Blauser was found to have entered the Capitol with his wife and made his way into the the Capitol rotunda where he resisted efforts by law enforcement to get him to leave.

What the foregoing cases demonstrate is, even among different judges, those defendants that merely entered the Capitol and later left, with little additional conduct, received non-incarcerative sentences and mostly minimal consequences. This is not to minimize any defendant's conduct, but rather to underscore the fact that similarly-situated defendants received relatively similar non-incarcerative sentences.

The defendant's proposed sentence is consistent with this principle.

## Conclusion

For the foregoing reasons, it is respectfully requested that the Court sentence the defendant to 12 months probation with $500 in restitution.

13

Dated: July 26, 2022                       Respectfully submitted,

Anthony M. Solis,
A Professional Law Corporation

*Anthony M. Solis /s/*
By: Anthony M. Solis
DC Bar No. 466104
23679 Calabasas Road, Suite 412
Calabasas, CA 91302
anthonysolislaw@gmail.com
213-489-5880

14