**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

DANIEL MICHAEL MORRISSEY,

Defendant.

Criminal Action No. 21-660 (RBW)

## MEMORANDUM OPINION

Daniel Michael Morrissey, the defendant in this case, pleaded guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), see Minute ("Min.") Entry (Feb. 23, 2022); Plea Agreement at 1, ECF No. 16, in connection with the events at the United States Capitol on January 6, 2021. On April 18, 2024, the defendant was resentenced to a three-year period of probation, see Judgment in a Criminal Case at 2, ECF No. 77, in light of the District of Columbia Circuit's decision in United States v. Little, 78 F.4th 453 (D.C. Cir. 2023), and the defendant did not appeal that resentencing. Instead, on November 13, 2024, the defendant—proceeding pro se—filed a motion to vacate his sentence, alleging various constitutional violations. See generally Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Def.'s § 2255 Mot."), ECF No. 86.

On January 20, 2025, before the Court had ruled on the defendant's motion to vacate his sentence, the President of the United States issued a proclamation "grant[ing] a full, complete and unconditional pardon to . . . individuals convicted of offenses related to events that occurred on or near the United States Capitol on January 6, 2021[,]" Proclamation No. 108887, 90 Fed. Reg. 8331 (Jan. 20, 2025), which included the defendant.

Notwithstanding his pardon—which the defendant purports to have rejected—continuing pro se, the defendant continues to challenge his conviction in this case and currently before the Court are: (1) the defendant's Motion for Relief from Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(3) ("Def.'s Rule 60(b) Mot."), ECF No. 95, as well as several related motions raising similar issues as those raised in his § 2255 motion;[1] and (2) the defendant's Motion for Return of Restitution, Fines, and Fees ("Def.'s Fees Mot."), ECF No. 90, which was filed by counsel. Upon careful consideration of the parties' submissions,[2] and the entire record in this case, the Court concludes for the following reasons that it must: (1) grant the defendant's Rule 60(b) motion to the extent that it seeks to have the Court reconsider its prior Order denying as moot the defendant's § 2255 motion; (2) deny the defendant's reinstated § 2255 motion and his related motions seeking to challenge his conviction and sentence in this case; (3) decline to issue a certificate of appealability as to the defendant's § 2255 motion; and (4) deny the defendant's motion for the return of the restitution and fees he paid as part of the judgment in this case.

[1] See, e.g., Memorandum: Request for Appointment of Special Counsel ("Def.'s Special Counsel Mot."), ECF No. 142; Emergency Notice of Franks Violation and Motion to Vacate Proceedings Void Ab Initio ("Def.'s Franks Notice"), ECF No. 153.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Government's Response to the Defendant's Motion for Reimbursement of Fees and Restitution ("Gov't's Fee's Opp'n"), ECF No. 92; (2) the defendant's Addendum to Rule 60(b)(3) Motion, ECF No. 96; (3) the Defendant's Notice of Emergency Supplemental Evidence and Demand for Finding of Bias ("Def.'s Suppl. Evidence"), ECF No. 109; (4) the defendant's Second Addendum to Motion for Relief from Judgment Pursuant to FRCP 60(b)(3) (ECF No. 95) (Demand for Full Restitution, Consequential Damages & IIED), ECF No. 111; (5) the defendant's Special Memorandum in Support of Vacatur: Notice of Pre-Compliance Extra-Judicial Punishment, Fraud on the Court by the Court, and Obstruction of Justice, ECF No. 139; (6) the defendant's Special Memorandum Regarding Appellate Counsel's Obstruction of Justice and Defiance of Court Order ECF No. 67 ("Def.'s Special Mem."), ECF No. 141; (6) the defendant's Motion for Inquiry: Facts Not in Evidence Regarding ECF No. 86 Disparity ("Def.'s § 2255 Suppl."), ECF No. 149; (7) the United States' Position on Whether the Court Should Reconsider Its Prior Finding That the Defendant's 28 U.S.C. § 2255 Motion Is Moot Due to Presidential Pardon ("Gov't's Mootness Resp."), ECF No. 165; (8) the Defendant's Response to ECF 165 and Demand for Immediate Entry of Judgment on Conceded Motions ("Def.'s Mootness Resp."), ECF No. 174; (9) the Defendant's Motion for an Evidentiary Hearing to Resolve Documented Structural Fraud, Brady Violations, and Notice of Intent to Subpoena Witnesses Pursuant to Fed. R. Crim. P. 17 ("Def.'s Mot. for Evid. Hr'g"), ECF No. 177; and (10) Motion to Declare the Judgment Void Ab Initio, and Enter Default Judgment on Conceded Liabilities, ECF No. 186.

# I. BACKGROUND

## A. The Defendant's Offense Conduct and Guilty Plea

On February 23, 2022, the defendant pleaded guilty to Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). See Min. Entry (Feb. 23, 2022); Plea Agreement at 1. In exchange for his guilty plea, the government moved to dismiss the other three criminal offenses with which the defendant was charged: (1) Entering and Remaining in a Restricted Building or Ground, in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); and (3) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D). See Min. Entry (Aug. 16, 2022); Information at 1, ECF No. 7.

As part of his guilty plea, the defendant "agree[d] and stipulate[d] to the [following] factual basis for the defendant's guilty plea—that is, if this case [had] proceed[ed] to trial, the parties stipulate[d] that the United States could prove the [following] facts beyond a reasonable doubt." Statement of Offense ("SOF") at 1, ECF No. 17. Specifically, the Statement of Offense indicates that, on January 6, 2021, the defendant "sent a [former] co-worker a text message . . . of himself at the Lincoln Memorial[,]" in Washington, D.C. Id. ¶ 8. In response to his former co-worker's question regarding whether the defendant was at the United States Capitol, the defendant "responded with a photo that appear[ed] to have been taken inside the Capitol followed by the text 'Shit got crazy' and 'I [h]ave it all on video.'" Id. The defendant "then sent a selfie, apparently taken inside the U.S. Capitol building[.]" Id. "The following day, [the defendant] sent the [former] co-worker a video of himself inside the Capitol building in the rotunda area, wearing the same hat and sunglasses as shown in the" previous selfie. Id. ¶ 9. The Statement of Offense also stated that on January 6th the defendant "entered the Capitol building

through the Rotunda door at 2:27 p[.]m.[,] [and] proceeded into Statuary Hall, then entered the Will Rogers Hallway before protesting at the House Main Door[,]" id. ¶ 10, before "exit[ing] the Upper House Doors at 2:55 p[.]m[.]," spending "a total of approximately 28 minutes inside the Capitol[,]" id. The government also presented video evidence at the defendant's original sentencing hearing depicting the defendant, inside the U.S. Capitol, "shouting 'stop the steal.'" Transcript of Sentencing Before the Honorable Reggie B. Walton 10:3 (Aug. 16, 2022) ("Aug. 16, 2022 Sent'g Tr."), ECF No. 75-2.

Relevant here, the defendant's plea agreement had the following waiver provision:

> [The defendant] also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence of the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that [the defendant] received ineffective assistance of counsel.

Plea Agreement at 5.

At the guilty plea hearing, the defendant confirmed to the Court under oath that he had reviewed the guilty plea agreement with his lawyer and fully understood the provisions of the guilty plea agreement. See Transcript of Plea Agreement Hearing Held Before the Honorable Reggie B. Walton 6:25–7:14 (Feb. 23, 2022) ("Guilty Plea Hr'g Tr."), ECF No. 53. Moreover, the Court reviewed each of the provisions of the plea agreement with the defendant, including the collateral attack waiver provision, and the defendant indicated that he understood that he was giving up his right to collaterally attack his conviction and sentence, with the exception of the request for relief based on the discovery of newly found evidence or based on a claim of ineffective assistance of counsel. See id. at 20:21–21:16. The defendant also confirmed that he had reviewed the Statement of Offense with his lawyer, see id. at 30:20–31:2, and that the

Statement of Offense was true and accurate; see id. at 31:3–5. Moreover, the defendant confirmed that it was his decision to enter a guilty plea, see id. at 42:14–15, and that his decision to enter a guilty plea was not the result of any threats or coercion, see id. at 42:11–12. Finally, the defendant represented that he was satisfied with the representation of his lawyer. See id. at 42:20–43:1.

**B. The Defendant's Submissions to the Court Regarding His Counsel's Performance and the July 14, 2022 Hearing**

Beginning in April 2022, the defendant transmitted to the Court a series of letters in which he represented that he "believe[d] there [was] a Brady Rule Violation" in his case, but he had only discovered what the Brady Rule required in conducting his own research on April 14, 2022. See generally Letters from Daniel Michael Morrissey to the Court, ECF No. 25 (sealed).[3] Specifically, the defendant represented that he had asked his counsel to request video evidence of his entry into the U.S. Capitol from the prosecution, which the defendant represented he located and provided to his counsel on February 13, 2022, ten days prior to entry of his guilty plea. See id. at 10.

Based on the defendant's representations, the Court vacated the defendant's pending sentencing hearing and ordered the parties to appear for a status hearing on July 14, 2022. See Order at 1 (June 28, 2022), ECF No. 26. At that hearing, the defendant indicated to the Court that he had found video evidence in the public domain purportedly depicting his entry into the U.S. Capitol, which he indicated was materially exculpatory because he alleged that it showed the doors to the U.S. Capitol through which he entered were "opened from the inside." Status

[3] Unless otherwise indicated, all pincites to the defendant's pro se filings are to the automatically generated ECF Page identification numbers that appear at the top of each page of those filings, or to the page number as displayed in the .pdf file of the submission where no automatically generated ECF Page identification number is visible.

Hr'g Tr. (July 14, 2022) at 5:1–20, ECF No. 95-1. In response, the Court emphasized to the defendant that

> even if what you're saying is true regardless of all of the violence and everything that was taking place [around the defendant at the time he entered the U.S. Capitol,] that you nonetheless felt that somehow you had the authorization to enter the Capitol, [ ] that's not what you pled guilty to. What you pled guilty to was once you got inside you then stayed inside and engaged in behavior that's not permitted, which was parading, demonstrating[,] and picketing.

Id. at 7:7–14. And, the defendant denied that he was alleging that he had not committed the offense to which he pleaded guilty. See id. at 10:10–14. Moreover, the defendant indicated that he was not requesting that his lawyer withdraw his appearance at that time, see id. at 13:4–7, and counsel for the defendant informed the Court on July 18, 2022, that he would continue to represent the defendant at his sentencing, see Defendant's Status Report re Sentencing at 1, ECF No. 29.

**C. The Defendant's Sentencing, Appeal, and Letters to the Court**

On August 16, 2022, the defendant appeared before the Court for sentencing, via teleconference. See Min. Entry (Aug. 16, 2022). At the sentencing hearing, counsel for the defendant did not submit any video exhibit showing the defendant's entrance into the U.S. Capitol, but did note several times for the record that, "it is unclear from [the government's proffered] video whether the defendant was actively pushing the officers on his own accord or if he was caught up in a mass of people." Aug 16, 2022 Sent'g Hr'g Tr. at 10:25–11:2; see also Defendant Daniel Michael Morrissey's Sentencing Memorandum at 5, ECF No. 30 (contending that the defendant "entered [the U.S. Capitol building] peacefully through an open door"). The defendant also submitted a letter along with his sentencing memorandum, in which he "fully accept[ed] responsibility for [his] actions, and [ ] apologize[d] for being part of the events on that date." Id., Ex. 1 (Letter from Daniel Michael Morrissey to the Court). The defendant did not

reference the video of his entry into the Capitol building in his letter, see generally id., nor during his remarks at the sentencing hearing, see Aug 16, 2022 Sent'g Hr'g Tr. at 18:11–19:13.

Having heard from the parties, the Court sentenced the defendant to a forty-five-day period of incarceration and a thirty-six-month period of probation.[4] See Judgment in a Criminal Case at 2, 4, ECF No. 37. The Court also imposed a fine of $2,500, restitution in the amount of $500, and a special assessment of $10. See id. at 8. On August 23, 2022, the defendant appealed his sentence, see Notice of Appeal at 1, ECF No. 39, and was permitted to proceed in forma pauperis on appeal, see Order at 1 (Oct. 18, 2022), ECF No. 45. In an affidavit, the defendant indicated that his issues on appeal were "[t]o be determined by [his] appellate counsel," but included an ineffective assistance of counsel claim. Motion for Permission to Proceed on Appeal In Forma Pauperis, Ex. A (Affidavit Accompanying Motion for Permission to Appeal In Forma Pauperis) at 1, ECF No. 41-1. On November 3, 2022, the Court granted a motion filed by the defendant's trial counsel to withdraw his appearance, see Order at 1 (Nov. 3, 2022), ECF No. 50, and Tony Axam—who had been appointed to represent the defendant on appeal—commenced his representation of the defendant.

Despite Mr. Axam's appointment, and while the defendant's appeal was still pending, the defendant transmitted to the Court several more letters reiterating his previous Brady argument based on the video purportedly depicting his entrance into the U.S. Capitol Building. See generally Letter from Daniel Michael Morrissey to the Court (Mar. 14, 2023), ECF No. 59; Letter from Daniel Michael Morrissey to the Court (Apr. 15, 2023), ECF No. 60; Letter from Daniel Michael Morrissey to the Court (Apr. 17, 2023), ECF No. 61; Letter from Daniel Michael

[4] The Court subsequently granted the defendant an extension of time to surrender to the Federal Bureau of Prisons, see Order at 1 (Sept. 14, 2022), ECF No. 43, and then granted his motion for release on bond pending the appeal of the Court's sentence, see Order at 1 (Nov. 14, 2022), ECF No. 51.

Morrissey to the Court (Apr. 20, 2023), ECF No. 64; Letter from Daniel Michael Morrissey to the Court (Apr. 22, 2023), ECF No. 66. On July 11, 2023, the Court denied without prejudice the defendant's request for a status hearing, as well as his requests for relief—including vacatur—relating to his ineffective assistance of counsel claim, based on the Court's lack of subject matter jurisdiction over those issues during the pendency of the defendant's appeal. See generally Order (July 11, 2023), ECF No. 67. As the Court indicated in its July 11, 2023 Order, "the defendant's letters include very similar allegations to the allegations that were raised by the defendant, and addressed by the Court, during" the July 14, 2022 status hearing. See id. at 2 n.3 (citing Min. Entry (July 14, 2022)).

On March 26, 2024, the District of Columbia Circuit issued its Mandate regarding the defendant's appeal in this case, ordering that the case be remanded to this Court in light of the District of Columbia Circuit's holding in United States v. Little that the imposition of a split sentence for a petty offense—the offense in both Little and this case being Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G)—was not authorized by statute. See 78 F.4th at 461; see also Order at 1, United States v. Morrissey, No. 22-3059 (D.C. Cir. Feb. 1, 2024).

Thus, the Court ordered the parties to appear for resentencing in light of the Circuit's Mandate. See Order at 1 (Mar. 27, 2024), ECF No. 73. In the defendant's renewed sentencing memorandum, prepared by Mr. Axam, the defendant argued that a sentence of Probation rather than incarceration was appropriate in part because the defendant "pled guilty to his crime promptly, and as he has previously expressed to the Court, he continues to regret having paraded in the Capitol on January 6th." Defendant's Re-Sentencing Memorandum ("Def.'s Re-Sent'g Mem.") at 3, ECF No. 76. The defendant further indicated that "while he has more recently

expressed frustrations concerning his interactions with his prior attorney and the efforts that attorney took to obtain discovery materials and to discuss potential options in this case, [the defendant] continues to accept responsibility for his crime." Id. On April 10, 2024, the Court resentenced the defendant to a three-year term of probation, consistent with the defendant's requested sentence, rather than imposing a three-year term of probation and a forty-five-day period of intermittent confinement, as requested by the government. See Judgment in a Criminal Case at 2, ECF No. 77; see also Def.'s Resent'g Mem. at 1; Government's Resentencing Memorandum at 1, ECF No. 75. Additionally, the Court reimposed the component of the original sentence requiring payment of restitution in the amount of $500 and a $10 special assessment, but did not reimpose the $2,500 fine the defendant had been ordered to pay. See Judgment in a Criminal Case at 6, ECF No. 77. The defendant did not appeal his conviction or sentence.

**D. The Defendant's Pending Motions**

On November 8, 2024, the defendant filed a motion under 28 U.S.C. § 2255 to vacate his guilty plea and sentence. See generally Def.'s § 2255 Mot. The defendant's motion was based on three grounds. First, the defendant alleged violations of his due process rights resulting from: (1) the government's alleged failure to comply with its Brady obligations relating to the previously identified videos of his entrance into the Capitol Building, see Def.'s § 2255 Mot. at 5; and (2) the purportedly coercive imposition of collateral sanctions as a result of the investigation into his conduct in this case, such as the cancellation of his unemployment benefits and restrictions on his travel, see Def.'s Suppl. Evidence, Exhibit (Letter from Defendant to the

Court (Nov. 18, 2024), ECF No. 109-2, at 65.[5] Second, the defendant asserted that he received ineffective assistance by both his trial counsel, Mr. Solis, and his appellate counsel, Mr. Axam. See id. at 6. Third, the defendant alleged that the government violated his Eighth Amendment rights based on the government's prosecution of this case and alleged denial of the defendant's "right to earn a living" due to "smears" against his character resulting from the prosecution. See id. at 8.

At the defendant's probation progress hearing on November 15, 2024, the Court indicated that it did not perceive that the defendant's § 2255 had any merit based on the existing record, but deferred making any conclusive determination to allow Mr. Axam to review the motion and discuss the merits of that motion with the defendant. See Min. Entry (Nov. 15, 2024). However, before the defendant's subsequent scheduled hearing, President Trump issued a proclamation "grant[ing] a full, complete[,] and unconditional pardon to . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021[,]" Proclamation No. 18,887, 90 Fed. Reg. at 8331, and thus, the Court denied as moot the defendant's § 2255 motion that was pending resolution by the Court, see Order (Jan. 30, 2025), ECF No. 89 at 1.

On April 29, 2025, the defendant—still represented by counsel—filed a motion seeking to have the Court "return all fines, fees, and restitution payments" paid by the defendant as a

[5] In separate filings, the defendant alleges that one of the agents in this case committed an alleged Franks violation by representing in her sworn affidavit in support of the warrant for the defendant's arrest that "individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police[.]" See e.g., Emergency Notice of Franks Violation and Motion to Vacate Proceedings Void Ab Initio at 2 (quoting Statement of Facts at 1, ECF No. 1-1). However, despite the Court's liberal construction of the defendant's § 2255 motion, the Court need not consider this argument because it was not raised in his § 2255 motion. See generally Def.'s § 2255 Mot. In any event, the Court has no basis to conclude that there was a Franks violation given the overwhelming evidence supporting the agent's statement regarding what was occuring at the U.S. Capitol when the defendant entered the building.

result of his guilty plea, see Def.'s Fees Mot. at 1, which the government opposes, see generally Gov't's Fees Opp'n. Subsequently, on July 14, 2025, the defendant—now proceeding pro se—filed a motion seeking relief from the Court's judgment pursuant to Federal Rule of Civil Procedure 60(b)(3), based on the same allegations advanced in his § 2255 motion. See generally Def.'s Rule 60(b) Mot. And, since that date, the defendant has filed dozens of other submissions in this case indicating his desire to have his conviction and sentence vacated and for the Court to take action against his former trial and appellate attorneys, counsel for the government, and certain agents associated with his case. See generally, e.g., Def.'s Special Counsel Mot.; Def.'s Franks Notice. On October 15, 2025, the Court denied without prejudice in part the defendant's Rule 60 motion to the extent that it sought to bring legal malpractice claims or claims for damages against his prior counsel and counsel for the government and held his motion in abeyance in all other respects. See Order at 3 (Oct. 15, 2025), ECF No. 101.

On February 3, 2026, the Court denied several of the defendant's other pending motions, including a motion for this Court to recuse itself and a motion to grant his Rule 60(b) motion as conceded because the government failed to respond to that motion. See generally Order (Feb. 3, 2026), ECF No. 151. However, based on the Court's further review of the record in this case, the Court ordered that the parties submit their views to the Court "as to whether the Court should reconsider its prior finding that the defendant's motion to vacate his sentence is moot due to the issuance of the Presidential pardon and the defendant's purported rejection of that pardon." Id. at 8. Relevant to the parties' pending motions, the Court did not order the government to file a response to the defendant's § 2255 motion.

On March 3, 2026, the government submitted its response to the Court's Order, indicating its position "that the Court should reconsider its prior finding that the [defendant's

original § 2255] motion is moot." Gov't's Mootness Resp. at 1. Although, consistent with the scope of the Court's March 3, 2026 Order, the government did not respond to the claims set forth in the defendant's § 2255 motion, noting that his claims were "procedurally defaulted, and in any event, the files and records of the case conclusively show that [the] defendant is entitled to no relief." Id. at 1 n.1. On March 23, 2026, the defendant filed his response to the Court's March 3, 2026 Order concurring with the government's position that his § 2255 is not moot despite the Presidential pardon and arguing again that the government had "formally abandoned" any of its defenses to his § 2255 motion by failing to respond to that motion or his numerous other pro se motions. Def.'s Mootness Resp. at 1.[6] Finally, on April 28, 2026, the defendant filed a motion requesting an evidentiary hearing. See Def.'s Mot. for Evid. Hr'g at 1.

## II. STANDARDS OF REVIEW

### A. Relief from Judgment Pursuant to Federal Rule 60(b)

"Rule 60(b) provides that 'upon such terms as are just, the [C]ourt may relieve a party . . . from a final judgment, order, or proceeding' for any of several specified reasons." Twelve John Does v. District of Columbia, 841 F.2d 1133, 1138 (D.C. Cir. 1988). However, the Court "enjoys a large measure of discretion in deciding whether to grant or deny a [Rule] 60(b) motion[.]" Randall v. Merrill Lynch, 820 F.2d 1317, 1320 (D.C. Cir. 1987) (citations omitted).

The Supreme Court has noted that "Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings . . . only to the extent that [it is] not inconsistent with applicable federal statutory provisions and rules." Gonzalez v. Crosby, 545 U.S. 524, 529 (2005) (second alteration in original) (internal quotation marks omitted). For example, in the

[6] The defendant also filed numerous other motions during this time reiterating his claims regarding the prosecution of his case, which the Court will address below in the context of his arguments for vacating his sentence.

context of a § 2255 motion, "[q]uintessential examples of proper Rule 60(b) arguments . . . include that . . . the court, in denying the [underlying] § 2255 motion, misapplied a rule that precluded a merits determination, such as 'failure to exhaust, procedural default, or statute-of-limitations bar.'" United States v. Fields, 387 F. Supp. 3d 1, 4–5 (D.D.C. 2019) (first quoting Gonzalez v. Crosby, 545 U.S. 524, 529 (2005)); then citing United States v. Rice, No. 03-cr-441 (RBW), 2019 WL 1778509, at * 2 n.2 (D.D.C. Apr. 22, 2019)).

## B. Motions to Vacate Pursuant to 28 U.S.C. § 2255

28 U.S.C. § 2255 permits a person in custody under sentence of a federal court to "move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States, . . . [(2)] that the court was without jurisdiction to impose such sentence, or [(3)] that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[7] If the reviewing court finds that any of these grounds exist, it "shall vacate and set the judgment aside[,] and [it] shall [also] discharge the [petitioner,] resentence him[,] grant a new trial[,] or correct the sentence as may appear appropriate." Id. § 2255(b).

Under § 2255, a district court must grant an evidentiary hearing to conduct additional fact-finding necessary to resolve the motion "[u]nless the motions[,] the files[,] and the records of the case conclusively show that the [petitioner] is entitled to no relief." Id. But, "[e]ven if the files and records of the case do not clearly rebut the allegations of the [petitioner], no hearing is

[7] The D.C. Circuit has held that even where portions of a defendant's claims are mooted due to the completion of his period of incarceration, he may still pursue relief from other aspects of his sentence, such as the imposition of a special assessment and restitution. See United States v. Mejia, No. 20-3086, 2022 WL 4280686, at *1 (D.C. Cir. Sept. 14, 2022); see also Lorance v. Commandant, 13 F.4th 1150, 153 (10th Cir. 2021) (holding that even where a habeas petitioner is no longer in custody, he "can maintain his habeas action following his release from custody if he can identify 'collateral consequences' constituting 'disabilities or burdens [which] may flow from [his] conviction").

required where [the petitioner's] claims are 'vague, conclusory, or palpably incredible.'" United States v. Pollard, 959 F.2d 1011, 1031 (D.C. Cir. 1992) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). In making this assessment, the Court construes pro se filings liberally. Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 583 (D.C. Cir. 2002).

## III. ANALYSIS

The Court begins its analysis by determining how to properly construe the defendant's motion for relief pursuant to Rule 60(b), considering his pro se status and the relief he requests. The Court concludes that it will construe the defendant's motion as seeking to have the Court, inter alia, reconsider its prior denial of his § 2255 motion as moot due to the issuance of the Presidential pardon, and that reconsideration is appropriate under those circumstances. Therefore, the Court will address the defendant's reinstated § 2255 motion, as well as his other pending pro se motions relating to those same issues. Ultimately, for the reasons below, the Court concludes that it must summarily deny these motions and declines to issue a certificate of appealability regarding his § 2255 motion. Finally, for the reasons set forth below, the Court concludes that, based on the Court's denial of the defendant's reinstated § 2255 motion, it must also deny his motion for the return of the $510 he paid as a part of his conviction and sentence in this case.

### A. Whether the Defendant Is Entitled to Relief Pursuant to Rule 60(b)

#### 1. The Proper Construction of the Defendant's Rule 60(b) Motion

The Court first addresses the defendant's Rule 60(b) motion. For the following reasons, the Court will construe his motion as a motion pursuant to Rule 60(b)(6) for relief from the

Court's Order denying the defendant's § 2255 motion as moot based on the President's pardon.[8] As indicated previously, "Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings . . . only to the extent that [it is] not inconsistent with applicable federal statutory provisions and rules." Gonzalez, 545 U.S. at 529 (second alteration in original) (internal quotation marks omitted). "Courts in this District have routinely invoked Gonzalez in denying motions brought under Rule 60(b) that in substance challenge the merits of a prior decision denying relief under [§] 2255" because such motions are properly considered as second or successive habeas petitions. United States v. Wilson, 950 F. Supp. 2d 90, 94 (D.D.C. 2013) (collecting cases). However, "a Rule 60(b) motion that attacks 'some defect in the integrity of the federal habeas corpus proceeding,' for example, 'denial for such reasons as failure to exhaust, procedural default, or [the] statute-of-limitations bar,' should not be treated as a habeas petition." Id. (quoting Gonzalez, 545 U.S. at 532 & n.4).

Here, although the defendant's Rule 60(b) motion raises the same claims as presented in his original § 2255 motion, the Court never adjudicated his prior motion on the merits, and thus construes his Rule 60(b) motion as seeking relief from the Court' Order denying his § 2255 motion as moot. Order (Jan. 30, 2025) at 1. And, because the Court did not resolve the defendant's § 2255 motion on the merits, the Court construes the defendant's Rule 60(b) motion as attacking a "defect in the integrity of the federal habeas proceedings[,]" United States v. Fields, 387 F. Supp. 3d 1, 4 (D.D.C. 2019) (quoting Crosby, 545 U.S. at 529), i.e., its denial of the motion as moot.

---

[8] Because the Court ultimately concludes that reconsideration of its prior Order is appropriate, and because the defendant's Rule 60(b) motion merely reiterates his previous arguments for vacating his conviction and sentence, the Court only addresses his Rule 60(b) motion as one seeking relief from the Court's prior Order and requesting that the Court adjudicate his claims, rather than addressing his Rule 60(b) motion as a second or successive § 2255 motion.

Further, although the defendant represents that his motion is brought under Rule 60(b)(3), as the Court concludes below, see infra Sec. III.B., it perceives no "fraud . . . , misrepresentation, or misconduct by an opposing party[,]" Fed. R. Civ. 60(b)(3), and thus relief under Rule 60(b)(3) is inapplicable. However, because the defendant's claims mirror those made in his original § 2255 motion, the Court finds it appropriate to construe his pro se motion liberally as also seeking relief under Rule 60(b)(6). Thus, the Court will determine whether, under the circumstances of this case, relief from the Court's order dismissing the defendant's original § 2255 is warranted.

**2. Whether the Court Erred in Dismissing as Moot the Defendant's Original § 2255 Motion Due to His Presidential Pardon**

Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)" of the Rule. Salazar ex rel. Salazar v. District of Columbia, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988)); see Fed. R. Civ. P. 60(b)(6) (permitting courts to "relieve a party . . . from a final judgment, order, or proceeding" for "any other reason that justifies relief"). "The Rule does not particularize the factors that justify relief, but . . . provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" Liljeberg, 486 U.S. at 863–64 (quoting Klapprott v. United States, 335 U.S. 601, 614–15 (1949)).

The Court concludes that the defendant has shown that he is entitled to relief from the Court's Order denying his original § 2255 motion as moot due to his Presidential pardon. As the Court indicated in its previous Order and as stated above, the D.C. Circuit has held that, even where portions of a defendant's claims are mooted due to the end of his period of incarceration,

he may still pursue relief from other aspects of his sentence, such as the imposition of a special assessment and restitution. See Mejia, No. 20-3086, 2022 WL 4280686, at *1; see also Lorance 13 F.4th 1150 at 153 (holding that even where a habeas petitioner is no longer in custody, he "can maintain his habeas action following his release from custody if he can identify 'collateral consequences' constituting 'disabilities or burdens [which] may flow from [his] conviction").

Here, the defendant filed his original § 2255 motion prior to the issuance of the Presidential pardon and while he was still serving the probationary component of his sentence. And, by the time the pardon was issued, the defendant had already paid his special assessment and restitution imposed by the Court. The government agrees that, even though it opposes the defendant's motion for the return of his special assessment and restitution, which is discussed in more detail below, see infra Sec. III.D, "vacatur of the defendant's conviction—the relief he seeks in his § 2255 motion—would entitle [him] to return of the special assessment and restitution[,]" Gov't's Mootness Resp. at 2–3.

Thus, because the Court erred in concluding that the defendant's § 2255 motion was mooted by the issuance of the President's pardon and because that defect in the defendant's habeas proceedings precluded consideration of the merits of his § 2255 motion, the Court will grant the defendant's Rule 60(b) motion to the extent that it seeks relief from the Court's January 30, 2025 Order, and will reinstate and now resolve the defendant's § 2255 motion in this Memorandum Opinion.

**B. The Defendant's § 2255 Motion and Associated Motions**

As previously indicated, the defendant's § 2255 motion is based on three grounds. First, the defendant alleged violations of his due process rights resulting from: (1) the government's alleged failure to comply with its Brady obligations relating to the previously identified videos of his entrance into the Capitol Building, see Def.'s § 2255 Mot. at 5; and (2) the purportedly

coercive imposition of collateral sanctions as a result of the investigation into his conduct in this case, such as the cancellation of his unemployment benefits and restrictions on his travel, see Def.'s Suppl. Evidence, Exhibit (Letter from Defendant to the Court (Nov. 18, 2024) at 65.[9] Second, the defendant asserts that he received ineffective assistance by both his trial counsel, Mr. Solis, and his appellate counsel, Mr. Axam. See id. at 6. Third, the defendant alleges that the government violated his Eighth Amendment rights based on its prosecution of this case and the alleged denial of his "right to earn a living" due to "smears" against his character resulting from the prosecution. See id. at 8. For the following reasons, the Court will summarily deny the defendant's § 2255 motion and his motion for an evidentiary hearing[10] because the defendant's motion itself and the record in this case conclusively demonstrate that he has either procedurally defaulted his claims or that his claims are meritless. See Morrison, 98 F.3d at 625.[11]

[9] In other filings with the Court, the defendant alleges that one of the agents in this case committed an alleged Franks violation by representing in her sworn affidavit in support of the warrant for the defendant's arrest that "individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police[.]" See e.g., Emergency Notice of Franks Violation and Motion to Vacate Proceedings Void Ab Initio at 2 (quoting Statement of Facts at 1, ECF No. 1-1). However, despite the Court's liberal construction of the defendant's § 2255 motion, the Court need not consider this argument because it was not raised in his § 2255 motion. See generally Def.'s § 2255 Mot. In any event, the Court has no basis to conclude that there was a Franks violation given the overwhelming evidence supporting the agent's statement regarding the circumstances at the U.S. Capitol when the defendant entered the building.

[10] Upon receiving a § 2255 motion, the Court must notify the United States attorney and "grant a prompt hearing" on the motion. 28 U.S.C. § 2255(b). However, here the Court was not required to do so because "the motion and the files and records of the case conclusively show that the [petitioner] is entitled to no relief. . . ." Id. Instead, when "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal." United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting Rules Governing § 2255 Proceedings, Rule 4, 28 U.S.C. foll. § 2255); see also Shah v. United States, 878 F.2d 1156, 1161 (9th Cir. 1989) ("Mere conclusory allegations do not warrant an evidentiary hearing.") (citations omitted).

[11] Because the Court concludes that it must summarily deny the defendant's § 2255 motion without ordering a response from the government, it need not determine whether most of the defendant's claims in this case are barred by the collateral attack waiver component of his guilty plea agreement.

### 1. Whether the Defendant Has Procedurally Defaulted Any of His Arguments

As an initial matter, the defendant acknowledges that he did not raise many of his claims presented in his § 2255 on direct appeal, purportedly because "Mr. Axam would not allow [him] to [do so]."[12] Def.'s § 2255 Mot. at 4, 6, 7. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" United States v. Pettigrew, 346 F.3d 1139, 1145 (D.C. Cir. 2003) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)); see United States v. Frady, 456 U.S. 152, 167–68 (1982) (concluding the same in the context of a § 2255 motion). "[C]ause . . . ordinarily turn[s] on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [relevant] procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Bousley, 523 U.S. at 621–23 (citing Murray for procedural default rule in the context of a guilty plea). For example, the defendant may demonstrate "that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." Murray, 477 U.S. at 488 (citations and quotation marks omitted).

To establish "actual prejudice" in a case where the defendant entered a guilty plea rather than being found guilty following a trial, the defendant "must show that there is a reasonable probability that but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Therefore, in such circumstances, "to

[12] As discussed in more detail below, see infra Sec. III.B.2, based on the defendant's other submissions to the Court, it appears that Mr. Axam indicated to the defendant that he believed the defendant's claims based on the alleged Brady violation, and the related ineffective assistance of counsel claims, were meritless, and informed the defendant that, should the defendant insist on pursuing those claims on appeal, he "would likely have to ask the Court to allow [him] to withdraw and [he] would file a[n] [Anders] brief . . . informing the Court of the reasons that [he] d[id] not believe there [was] a non-frivolous argument to be made on [the defendant's] behalf." Def.'s Special Mem., Exhibit (Email from Tony Axam to Defendant (Nov. 29, 2023)), ECF No. 141-1, at 11.

obtain collateral relief[,] a [petitioner] must clear a significantly higher hurdle than would exist on direct appeal." Frady, 456 U.S. at 166. That is especially true here because "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." Bousley, 523 U.S. at 621 (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)).

The defendant does not appear to raise a claim "that he is 'actually innocent.'" Pettigrew, 346 F.3d at 1145 (quoting Bousely, 523 U.S. at 622). As discussed previously, throughout the Court's proceedings, the defendant consistently denied that he was seeking to argue that he had not in fact engaged in the conduct alleged in the government's Statement of Offense. See Status Hr'g Tr. at 10:10–14 ("I acknowledged that in my plea hearing and I acknowledged that throughout this entire process."). Moreover, the defendant does not indicate in his § 2255 motion or in any of his supplemental filings that he is actually innocent of the criminal offense to which he pleaded guilty. See generally Def.'s § 2255 Mot. Therefore, because the defendant does not raise an actual innocence claim, the Court must determine whether he has shown "cause" and "actual prejudice" to excuse his procedural default. Pettigrew, 346 F.3d at 1145. For the following reasons, the Court concludes that he has failed to do so, and therefore any claims being raised by the defendant that are separate from his ineffective assistance of counsel claims are procedurally barred.

**a. The Brady Violation Claim**

The Court first addresses the defendant's Brady violation argument. "The government violates Brady when it '(i) fails to disclose to the defense, whether willfully or inadvertently, (ii) exculpatory or impeachment evidence that is favorable to the accused, and (iii) the withholding

of that information prejudices the defense.'" Johnson, 960 F.3d at 655 (quoting United States v. Straker, 800 F.3d 570, 603 (D.C. Cir. 2015) (per curiam)).[13]

As the Court has already emphasized to the defendant, assuming arguendo that the videos depict what he indicates they do—i.e., that based on the doors purportedly being opened from the inside, "regardless of all the violence and everything that was taking place" around him at that time, he "nonetheless felt that somehow [he] had the authorization to enter the Capitol," the defendant pleaded guilty not for entering the Capitol, but for parading, demonstrating, and picketing once inside the Capitol. Status Hr'g Tr. at 7:7–14. The circumstances regarding how the defendant entered the Capitol are wholly irrelevant to the charge he pleaded guilty to. Indeed, pursuant to his plea agreement, the government dismissed the remaining counts, including Count One, which charged the defendant with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). See Plea Agreement at 2. Thus, none of the evidence the defendant alleges constitutes Brady material would have undermined the government's video evidence presented at the defendant's sentencing hearing depicting the defendant, inside the U.S. Capitol, "shouting 'stop the steal.'" Aug. 16, 2022 Sent'g Tr. at 10:3. Therefore, the Court concludes that the defendant's claims based on the government's alleged Brady violation—to the extent that they are separate from the defendant's ineffective assistance of counsel claims discussed below—are procedurally barred because the defendant has failed to show that he was prejudiced by its nondisclosure before he entered his guilty plea.

[13] As another member of this Court has noted, "[c]ircuit courts are split on whether a defendant has a Brady right to exculpatory evidence before pleading guilty[,]" United States v. Nichols, No. 21-cr-117 (RCL), 2023 WL 6809937, at *4 (D.D.C. Oct. 16, 2023) (listing cases), and the District of Columbia Circuit has not yet addressed this question. However, although there is some disagreement as to the applicability of Brady in such circumstances, the weight of legal authority appears to support the ability to raise Brady violation claims to the extent that the defendant argues that the government's failure to disclose exculpatory material caused the defendant's guilty plea to have not been knowing and voluntary. See, e.g., United States v. Nelson, 979 F. Supp. 2d 123, 130 (D.D.C. 2013); United States v. Jevric, No. 23-cr-63 (RDM), 2026 WL 1693877, at *4 (D.D.C. June 11, 2026) (assuming that Brady applies). Thus, the Court will assume that Brady applies to the defendant's claims in this case.

**b. Procedural Due Process and Eighth Amendment Claims**

The defendant next appears to argue that the government violated his procedural due process rights because "[o]nce [he] was identified as a January 6 person of interest, [his] right to fly was taken away, as was [his] Pandemic Unemployment Insurance[,]" which he asserts "was the only source of income that [he] had" at that time. Def.'s Suppl. Evidence, Exhibit (Letter from Defendant to the Court (Nov. 18, 2024) at 65. The defendant also argues that his sentence violated the Eighth Amendment, based on allegations which, for the most part, merely restate his due process claims. Specifically, he argues that he "has been subjected to life-altering consequences stemming from a politically motivated prosecution, resulting in conditions tantamount to cruel and unusual punishment." Def.'s § 2255 Suppl., Exhibit (Copy of December 20, 2024 Motion to Vacate), ECF No. 149-1, at 74.

Fatal to the defendant's claims relating to the collateral effects of his prosecution in this case, such as the termination of his unemployment insurance and restrictions on his ability to fly, "the text of § 2255 itself limits the relief available to those petitioners 'claiming the right to be release.'" United States v. Bikundi, No. 14-30-2 (BAH), 2021 WL 3403936, at *3 (D.D.C. Aug. 4, 2021). Therefore, to the extent that the defendant is challenging the purported "life-altering consequences" that resulted from his conviction in this case, separate from his conviction and sentence in this case or the government's custody of the defendant, his Fifth and Eighth Amendment claims are not cognizable under § 2255. Cf. United States v. Wilkins, 734 F. App'x 1, 5 (D.C. Cir. 2018) (concluding that "[a] claim disputing a restitution order . . . does not

challenge any aspect of the government's custody over the defendant and therefore may not be brought under § 2255") (listing cases).[14]

The defendant does not appear to argue that his acceptance of the government's plea offer was the result of coercion based on these collateral effects. See generally Def.'s § 2225 Mot.; Def.'s § 2255 Suppl. That omission is consistent with the defendant's position at his guilty plea hearing, where he affirmed that he was entering his plea because he was guilty and not because he had been "threatened, forced, or coerced" into pleading guilty. See Guilty Plea Hr'g Tr. at 42:11–13, 43:2–7. And, because "[a] petitioner's representations 'at the plea hearing as to . . . the knowing and voluntary nature of his plea . . . may constitute a formidable barrier to his later refutations[,]" Moore v. United States, 881 F. Supp. 2d 125, 131 (D.D.C. 2012) (quoting United States v. Taylor, 139 F.3d 924, 933 (D.C. Cir. 1988)), the Court has no basis to conclude that the defendant's guilty plea was coerced, to the extent that the defendant is raising such an argument.

Therefore, because the defendant's other due process and Eighth Amendment claims lack merit, the defendant has not shown that he has suffered actual prejudice, and accordingly these claims are also procedurally barred, to the extent that they are separate from his ineffective assistance of counsel claims.

**2. The Defendant's Ineffective Assistance of Counsel Claims**

Having concluded that the defendant's ineffective assistance of counsel claims are not procedurally barred, the Court next determines whether any of the defendant's claims that Mr. Solis and Mr. Axam provided him ineffective assistance of counsel have merit. The Court addresses these claims, despite the defendant's failure to raise them on direct appeal, because

[14] Although the defendant does not appear to argue that the sentence the Court ultimately imposed—i.e., a three-year term of probation—is itself a violation of the Eighth Amendment, the Court notes that the defendant was eligible for a term of probation up to five years under the Sentencing Guidelines, see 18 U.S.C. § 3561(c)(2), and thus, any such argument would be meritless, cf. United States v. Cyrus, 890 F.2d 1245, 1248 (D.C. Cir. 1989) (denying appeal of sentence because it failed to establish the requisite "level of gross inequity" of the sentence imposed).

ineffective assistance of counsel claims are not subject to the procedural-default rule. Massaro v. United States, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

To prevail on an ineffective assistance of counsel claim, a "defendant must demonstrate both deficient performance [by his counsel] and prejudice to him" because of counsel's deficient performance. United States v. Williams, 488 F.3d 1004, 1010 (D.C. Cir. 2007) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Counsel's performance is deficient only where counsel "made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687; see also United States v. Abney, 812 F.3d 1079, 1086 (D.C. Cir. 2016) ("Counsel's performance is 'deficient' when his representation falls below an objective standard of reasonableness." (citing United States v. Rodriguez, 676 F.3d 183, 189 (D.C. Cir. 2012))). In other words, counsel must provide "reasonably effective assistance," Strickland, 466 U.S. at 687, measured by "prevailing professional norms," id. at 688; see also Massaro, 538 U.S. at 505 ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy. . . ."). When entertaining claims of ineffective assistance of counsel, "[j]udicial scrutiny of counsel's performance must be highly deferential," Strickland, 466 U.S. at 689, and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. Prejudice occurs if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

As indicated above, in the context of a guilty plea, the defendant "must show that that there is a reasonable probability that but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. And, relatedly, "when it comes to ineffective-assistance claims leveled at appellate counsel, there is not much daylight between Strickland's deficiency prong and its prejudice prong." Waters v. Lockett, 896 F.3d 559, 570 (D.C. Cir. 2018) (citations omitted). "That is because '[i]f appellate counsel reasonably opts not to raise an issue with little or no likelihood of success, then there is no reasonable probability that raising the issue would have changed the result of [the] defendant's appeal.'" Johnson v. Wilson, 960 F.3d 648, 655 (D.C. Cir. 2020) (quoting Waters, 896 F.3d at 570).

Here, as indicated above, the crux of the defendant's ineffective assistance of counsel claims against both Mr. Solis and Mr. Axam is their failure to raise a purported Brady violation regarding of the alleged exculpatory videos the defendant discovered and provided to Mr. Solis. However, as the Court has already concluded, the defendant's Brady argument is meritless. See supra Sec. III.B.1.a. And, in the context of an ineffective assistance of counsel claim, "[wh]ere the error claimed is a failure to pursue an affirmative defense, 'the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.'" United States v. Solofa, 745 F.3d 1226, 1229 (D.C. Cir. 2014) (quoting Hill, 474 U.S. at 59). Thus, because the alleged Brady violation material proffered by the defendant would not create any affirmative defense to the offense to which he pleaded guilty, the Court cannot conclude that trial counsel was ineffective for not pursuing that argument in this case.[15] And,

[15] The defendant also argues that Mr. Solis harbored political bias against him based on a purported text message in which Mr. Solis is alleged to have told the defendant that he would "rather snort bath salts" than support then-former President Trump. Def.'s Suppl. Evidence, Exhibit (Text Messages), ECF No. 109-3, at 70. However, the record in this case clearly demonstrates that Mr. Solis provided adequate representation to the defendant, notwithstanding any animus he harbored against President Trump or whatever differences of opinion the defendant believes they may have had regarding issues unrelated to the prosecution of this case. Thus, the Court finds this argument meritless.

(continued . . .)

nowhere does the defendant argue that, but for Mr. Solis's failure to raise his desired Brady claim, there "is a reasonable probability that . . . he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Further, because the defendant's purported Brady claim—and thus, his intertwined ineffective assistance of trial counsel claim—is meritless, the Court concludes that Mr. Axam "reasonably op[ted] not to raise [the] issue" and "there is no reasonable probability that raising the issue would have changed the result of [the] defendant's appeal." Waters, 896 F.3d at 570. Moreover, because the Court has now concluded that the defendant's remaining due process and Eighth Amendment claims are meritless, see supra Sec. III.B.1, the Court also concludes that it was reasonable for Mr. Axam to not raise these issues on appeal, see Waters, 896 F.3d at 570. Accordingly, the Court must deny the defendant's motion to vacate his sentence based on ineffective assistance of his trial and appellate counsel.[16]

### C. Certificate of Appealability

Having concluded that the Court must deny the defendant's § 2255 motion, the Court must now determine whether a certificate of appealability is warranted in order for the defendant to appeal the Court's denial of his § 2255 motion. That is because any party seeking to appeal a final order issued in a proceeding under § 2255 must first obtain a certificate of appealability from a circuit justice or judge. See 28 U.S.C. § 2253(c)(1)(B) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."). The Supreme Court has noted

---

(. . . continued)

[16] The defendant also filed several other submissions arising out of his same arguments regarding the prosecution of his case, including a motion for "the appointment of Independent Special Counsel to investigate the systemic fraud and obstruction of justice committed in" his case, Memorandum: Request for Appointment of Special Counsel at 1, ECF No. 142. Because the Court has now concluded that the defendant's arguments regarding the prosecution of his case are meritless, the Court also denies these motions.

with approval that "[t]he courts of appeals uniformly interpret 'circuit justice or judge' [in § 2253(c)] to encompass district judges." Gonzalez v. Thaler, 565 U.S. 134, 143 n.5 (2012).

A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In other words, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotation marks omitted) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). And where a court has denied a motion under § 2255 on procedural grounds, a certificate of appealability "should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484. Finally, the certificate of appealability "shall indicate which specific issue or issues satisfy the showing [of the denial of a constitutional right]." 28 U.S.C. § 2253(c)(3).

For the following reasons, the Court concludes, based on its consideration of the record in this case and the defendant's motion, that a certificate of appealability is not warranted. First, the Court has already concluded that the defendant has failed to show that his due process rights were violated, or that he received ineffective assistance from trial or appellate counsel, relating to the purported Brady evidence because he has failed to show that he suffered any prejudice as a result of that avenue not being pursued. See supra Sec. III.B. Accordingly, the Court concludes that the defendant has not "made a substantial showing of the denial of a[ny] constitutional right." 28 U.S.C. § 2253(c)(2). Second, the Court concludes that the defendant is not entitled to

a certificate of appealability as to the claims not based on ineffective assistance of counsel because "jurists of reason" would not debate whether these claims were either: (1) procedurally defaulted due to the defendant's failure to raise them on direct appeal and his failure to establish actual prejudice; or (2) not recognizable under § 2255. Slack, 529 U.S. at 484. Thus, the Court declines to issue a certificate of appealability in regards to the defendant's § 2255 motion.

### D. The Defendant's Motion for Return of Restitution, Fines, and Fees

Finally, the Court addresses the defendant's motion for this Court to order that "the government and/or the Clerk of the Court return all fines, fees, and restitution payments [the defendant] has made in this case[,]" Def.'s Fees Mot. at 1, i.e., a total of $510, see id. at 5. At bottom, the defendant argues that, because "at the time of his pardon, [the defendant] was seeking reversal through a then-pending habeas petition[,]" id. at 3, "his case was not final[,]" id. (citations omitted), and thus, because "[t]here is no longer a valid conviction in this case and [the defendant] cannot be retried," the Court must order the return of the $510 the defendant paid in this case, id. at 5. In opposition, the government argues that the defendant is not entitled to the return of these funds because the pardon itself does not entitle him to the return of these funds, see Gov't's Fees Opp'n at 1–2, and because "the defendant's conviction was not invalidated or vacated[,]" id. at 3. For the following reasons, the Court agrees.[17]

The issuance of a pardon provides an individual with prospective—but not retrospective—relief. See Knote v. United States, 95 U.S. 149, 153–54 (1877). In other words, a pardon "does not make amends for the past[,]" in that "[i]t affords no relief for what has been

[17] Although the defendant in his pro se submissions claims to have rejected the Presidential pardon, see e.g., Motion to Declare the Judgment Void Ab Initio, And Enter Default Judgment on Conceded Liabilities, ECF No. 182 at 1-2, the Court need not conclusively determine the effect of the defendant's purported rejection of the pardon because the Court ultimately concludes that the issuance of the Presidential pardon does not entitle the defendant to the return of the funds the defendant was ordered to pay.

suffered by the offender in his person[,]" and no entitlement to compensation or the return of property. Id. Nor does a pardon "blot out guilt or expunge a judgment of conviction . . . ." In re North, 62 F.3d 1434, 1437 (D.C. Cir. 1994). Finally, relevant here, a pardon does not "affect any rights which have vested in others directly by the execution of the judgment for the offense[,]" Knote, 95 U.S. at 154, such as when money collected as part of a judgment "have been paid into the [United States] [T]reasury," and thus "can only be secured to the former owner of the property through an act of Congress[,]" id. On the other hand, if an individual's conviction is vacated or invalidated while the defendant's conviction was on appeal, the government "may not retain funds taken from [the defendant] solely because of [his] now-invalidated conviction . . . ." Nelson v. Colorado, 581 U.S. 128, 136 (2017).

Other members of this Court have reached different conclusions as to whether a defendant whose appeal was pending at the time they were pardoned, resulting in the appellate court dismissing the appeal as moot and vacating their conviction and sentence, may obtain the return of money paid as a result of his or her now-vacated conviction. Contrast United States v. Sullivan, 783 F. Supp. 3d 385, 391–92 (D.D.C. 2025) (concluding that, assuming arguendo the defendant was entitled to such relief as a matter of right, the Court could not authorize the return of those funds); United States v. Vargas, 789 F. Supp. 3d 60, 66 (D.D.C. 2025) (same); United States v. Hager, No. 21-cr-381 (TSC), 2025 WL 1886135, at *2 (D.D.C. July 3, 2025) (same); United States v. Sutton, No. 21-cr-598 (PLF), 2025 WL 2149396, at *2 (D.D.C. July 15, 2025) (same), with United States v. St Cyr, 804 F. Supp. 3d 1, 6–9 (D.D.C. 2025) (concluding that a defendant under these circumstances is entitled to a refund); United States v. Ballenger, 811 F. Supp. 3d 123, 128–29 (D.D.C. 2025) (same). This Court need not wade into that disagreement, however, because in this case, the Court's judgment—and the defendant's conviction—became

final after the defendant failed to appeal his sentence. Thus, with no appeal pending when the defendant was pardoned, those cases where the return of money paid are inapposite to this case.

To be sure, the defendant argues that he is entitled to the return of his restitution and other payment because his "habeas petition challenging his guilt was denied as moot before final resolution on the merits[,]" Def.'s Fees Mot. at 4, and thus "he was denied the opportunity for vacatur of his conviction under 28 U.S.C. § 2255[,]" id. However, the Court has now reconsidered its order denying the defendant's § 2255 motion as moot, reinstated that motion, and resolved that motion on the merits. Thus, having now denied the defendant's motion to vacate his conviction that was pending when the President issued his pardon, no court has vacated or otherwise invalidated the defendant's conviction, and accordingly, there is no legal predicate for the return of the restitution and special assessment he paid in this case. See Nelson, 581 U.S. at 136. Accordingly, the Court must deny the defendant's motion for the return of the restitution, fines, and fees he paid as part of his conviction and sentence in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must: (1) grant in part the defendant's Rule 60(b) motion to the extent that it seeks to have the Court reconsider its prior Order denying as moot the defendant's § 2255 motion; (2) deny the defendant's reinstated § 2255 motion and his related motions seeking to challenge his conviction and sentence in this case; (3) decline to issue a certificate of appealability as to the defendant's § 2255 motion; and (4) deny the defendant's motion for the return of the restitution and other fees he paid as part of the judgment in this case.

**SO ORDERED** this 9th day of September, 2026.[18]

REGGIE B. WALTON
United States District Judge

[18] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.